DANFORTH S. CLARK *et al.*

*v.*

OSMAN J. WILSON *et al.*

*Filed at Ottawa January 25, 1889.*

1. FRAUDULENT CONVEYANCE—*debtor must appear to have had some interest in the property conveyed.* Where the son of a debtor acquired the title to a lot from parties other than his father, the latter never having had possession, a creditor of the father, before he can have a quitclaim deed of the father to the son set aside as fraudulent, must show that the father was, at the time of making such deed, the owner of the lot, as otherwise there could be no fraud in his conveyance to his son by mere quitclaim deed.

2. ACKNOWLEDGMENTS OF DEEDS—*absence of signature of an officer.* The record of a deed by a son and his wife to his father was offered in evidence to show title in the grantee. It appeared from the record that the deed purported to have been acknowledged before a notary public, and, while the notary's seal was attached to the certificate of acknowledgment, the name of the notary was not attached to it: *Held,* that the deed was not properly acknowledged, so as to make the record evidence of its execution.

3. CONVEYANCES—*evidence to prove execution—admissions or declarations of a grantee.* Where a son has a complete chain of title without deraigning through his father, and it is sought by the father's creditors to prove a deed from him to the father, for the purpose of attacking the father's subsequent deed to him, and a deed by the son to a third person, as fraudulent, the admissions and declarations of the father, made out of the hearing of such third person, and after he had obtained his deed, are not admissible or competent evidence to prove the exist-

29—127 ILL.

ence of such a deed. Such admissions are incompetent to show the execution of the deed to the father, whether made after or before the deed from the father to the son.

4. SAME—*parol evidence—to show conveyances.* Conveyance of land can not be shown by parol evidence, and the execution of a deed can not be proved by the admissions of persons not themselves shown to have been in privity with the title under which the grantee claims, nor can the execution of a deed be proved by showing the state of the accounts between the parties.

5. PLEADING AND EVIDENCE—*in chancery.* On bill by creditors to set aside a deed from the debtor to his son, and a deed from the latter to a purchaser, on the ground of their being in fraud of the rights of creditors, neither the answer of the debtor nor the default of his son, as admitting title against the purchaser, can be received as evidence of title in the debtor, when the purchaser fails to admit title in him at any time. Matters not admitted in the answer must be proved, the same as if expressly denied.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of La Salle county; the Hon. CHARLES BLANCHARD, Judge, presiding.

The facts in this case are sufficiently stated in the following opinion of the Appellate Court:

LACEY, J.: "This was a bill brought by the plaintiffs in error, judgment creditors of defendant in error, Osman J. Wilson, in aid of the assignee, for the benefit of the creditors of said Wilson, the assignee neglecting and refusing to bring the suit. It was sought by the bill to set aside certain deeds, mortgages, notes and acknowledgments of indebtedness, executed and made by the said Wilson to different parties shortly before the execution of the deed of assignment by him, as fraudulent and void, and as in fraud of the assignment. Upon final hearing, the circuit court rendered a decree in said cause, granting complainants certain relief and refusing certain other relief asked for. Among the matters of relief asked for by the plaintiffs in error, was the setting aside, as fraudulent, a certain supposed deed, executed by said Osman J. Wilson, the assignor, and wife, prior to his assignment, December 18, 1884,

to Abram Wilson, in consideration of one dollar, as named in the deed, for the west half of lot 19, in Earlville; and also a deed on the same lot, executed by said Abram Wilson and wife, to Henry Boozel, one of the respondents, December 20, 1884, for consideration, named in the deed, of $3000; and also a certain promissory note, executed by the said O. J. Wilson, to his son, John T. Wilson, for the sum of $1000, executed December 18, 1884, just prior to the assignment. The court below refused the relief asked as to the above named deeds and note, and dismissed the bill as to Abram Wilson and Henry Boozel, no relief being sought as to them, except as to said deed, but held and decreed, as regards the note of $1000 given to John T. Wilson, that it be allowed as a claim against the estate of O. J. Wilson, to be paid *pro rata*, the same as other claims. The above ruling and action of the circuit court are sought to be reversed on this writ of error.

"It appears from the evidence, that Abram Wilson was the owner of the said half lot in Earlville as far back as April 18, 1883, by deed to him, of that date, for said lot, from the legal heirs of Benjamin Reynolds. It therefore became indispensable for plaintiff in error to show that O. J. Wilson, at the same time, owned the said lot in question, otherwise, he never having owned the lot and never having any interest in it, there could be no fraud in his conveyance to his son Abram by mere quitclaim deed. It appears, from the evidence, that O. J. Wilson never had possession of the lot, the possession always having been in Abram. In order to show that O. J. Wilson ever had title in the said premises, the plaintiffs in error offered what purported to be the record of a deed to said lot by Abram Wilson and wife to him, dated October 20, 1883. It appeared from an examination of the record, that the deed purported to have been acknowledged before a notary public, and, while the notary's seal was attached to the acknowledgment, the name of the notary was not signed to it. The reading of this record in evidence was objected to by Boozel, for the reason

that the acknowledgment was not signed. We are clearly of the opinion that the deed was not properly acknowledged, so as to make the record evidence of the execution of the deed.

"We are also of the opinion that there was no other competent evidence of the execution of the deed. Certain witnesses—Kelley, Munson, Bliss, Poole and Taylor—were introduced, to show, by admissions of O. J. Wilson, made out of the presence of Boozel, after he had acquired title to the lot from Abram, to the effect that O. J. Wilson had been the owner of the land at one time; also McDonald, to show that prior to the time that O. J. Wilson executed the deed to Abram, October, 1884, and after the supposed deed from Abram to O. J., the latter claimed to own the lot. We hold that none of the above evidence was competent to prove the execution of the supposed deed from Abram to O. J. Wilson. Abram had had a complete chain of title to the lot without deraigning title through O. J. Wilson, and after the deed from Abram to Boozel, he also had a complete title to the lot, without reference to the deed from O. J. Wilson to Abram, unless it can be shown that the supposed deed from Abram to O. J. Wilson had in fact been executed. The law did not require him to claim title through O. J. Wilson. He might rely on his chain of title without the latter's conveyance to Abram Wilson. Defendant in error Boozel's title was not dependent on showing that O. J. Wilson had once title, as supposed by counsel, but it was sought to prove that O. J. Wilson had once the legal title, as a starting point to attack the title of defendant in error Boozel. Such admissions are incompetent to show the execution of the deed, either made after or before the deed from O. J. Wilson to Abram Wilson. Conveyances can not be proved by parol evidence, and the execution of a deed can not be proved by the admissions of persons not themselves shown to have been in privity with the title under which the grantee claims. Evidence of possession is competent to show title, but in this case O. J. Wilson never had possession of the lot. Even if admissions of the holder

of the title to real estate may be competent evidence to impeach title, when made by a person while the owner is in possession, against his subsequent grantees, under certain circumstances, a question we need not decide, yet this would be an exception to the general rule against hearsay evidence, based on the ground that such admissions are made against the owner's interests, and are *res gestæ.* But this ownership must in some way be shown by evidence other than the admissions. It would be just as competent to prove agency by the admissions of the supposed agent, as to allow title to be shown by the declarations of the supposed grantee. We are clearly of the opinion that the execution of the deed can not be proved by showing the state of the accounts between O. J. and Abram Wilson. That throws no light on the subject. The plaintiffs in error can not invoke either the answer to the bill of O. J. Wilson or the default of Abram Wilson, as admitting title against their co-respondent, Boozel, the latter not admitting, in his answer, title in O. J. Wilson at any time. The matter must be regarded, conformably to the rules of pleading, as though expressly denied. Plaintiffs in error are put on their proof. The plaintiffs in error having failed to prove the allegations of the bill, and to show the execution of the deed from Abram to O. J. Wilson, the question of fraud on the part of O. J., in the execution of his quitclaim deed to Abram, becomes immaterial, there appearing to be a complete title in Boozel. Without such deed it would be improper to set aside Boozel's title, and subject the lot to sale for the payment of O. J. Wilson's debts.

"There only remains to determine whether the $1000 note given by O. J. Wilson to John T. Wilson was given for a *bona fide* debt. The evidence on this point is quite voluminous, and we have examined it with care, but find nothing in it to convince us that the court below erred in holding that the note was given for a *bona fide* consideration. It would serve no purpose to canvass the evidence in detail, and therefore we

omit to do so. The allowance of the claim, payable *pro rata,* is also proper, under the circumstances.

"We, upon the whole case, are satisfied with the decree of the court below. The decree is therefore affirmed."

Messrs. BULL & STRAWN, for the appellants:

Conveyances made in contemplation of an assignment are in fraud of the Assignment act, forbidding perferences. *Berry* v. *Cutts,* 42 Me. 445; *Holt* v. *Bancroft,* 30 Ala. 193.

When a debtor, in contemplation of insolvency, makes a general transfer of his property, it must be for the equal benefit of all. *Burroughs* v. *Luhndorf,* 8 Iowa, 96; *Livermore* v. *McNair,* 34 N. J. Eq. 478; *Kellogg* v. *Richardson,* 19 Fed. Rep. 17.

If the acknowledgment to the deed was imperfect, still the recording of the deed was notice to subsequent purchasers of all it contained. Starr & Curtis' Annotated Stat. chap. 30, sec. 32; *Reed* v. *Kemp,* 16 Ill. 445; *Stebbins* v. *Duncan,* 108 U. S. 32.

A deed may be valid and binding on the parties to it without any acknowledgment; (*Semple* v. *Miles,* 2 Scam. 315; *McConnell* v. *Reed,* id. 371; *Robinson* v. *Robinson,* 116 Ill. 250; *Roane* v. *Baker,* 120 id. 308;) and the execution of the deed may be proved by admissions of the grantor, or any other competent evidence. *Dundy* v. *Chambers,* 23 Ill. 369.

Whatever circumstances convince the mind that fraud has been perpetrated, are sufficient to prove it. *Gill* v. *Crosby,* 63 Ill. 190; *Bryant* v. *Simoneau,* 51 id. 324; *Reed* v. *Noxon,* 48 id. 323; *Carter* v. *Gunnels,* 67 id. 270.

Retention of possession, and taking rents and profits after conveyance, is evidence of fraud. *Hildreth* v. *Sands,* 2 Johns. Ch. 35; *Stone* v. *Grubham,* 2 Bulst. 225; *Codwise* v. *Sands,* 4 Johns. 586; *Swift* v. *Lee,* 65 Ill. 336; *New* v. *Oldfield,* 110 id. 138.

CLARK *et al.* *v.* WILSON *et al.*     455

Brief for the Appellee.   Opinion of the Court.

The possession of the grantor after a conveyance of the property, has been held a circumstance tending to prove fraud in many other cases. *Monell* v. *Scherrick*, 54 Ill. 269 ; *Merry* v. *Bostwick*, 13 id. 398 ; *Boies* v. *Henney*, 32 id. 130.

It has always been the law of this State, that where a creditor files a bill to subject property or funds in the hands of a third person to the payment of his debt, he thereby acquires a lien upon the property or fund, and upon recovery, will be entitled to a preference in the satisfaction of his claim, to the exclusion of other creditors, as a reward for his diligence. *Lyon* v. *Robbins*, 46 Ill. 276 ; *Rappleye* v. *International Bank*, 93 id. 396.

The same rule applies where the bill is filed after the death of the debtor. Such property is not assets in the hands of the administrator for general distribution among all the creditors, until the debt of the diligent creditor is satisfied. *Ballentine* v. *Beall*, 3 Scam. 203 ; *Cole* v. *Marple*, 98 Ill. 58.

Messrs. McDOUGALL & CHAPMAN, for the appellee Boozel :

The certificate of the acknowledgment of the notary is not in substantial conformity with the statute, and is therefore not evidence. *Marston* v. *Brashaw*, 18 Mich. 81; Rev. Stat. chap. 30, sec. 27 ; *Livingstone* v. *Ketelle*, 41 Am. Dec. 166.

Messrs. MAYO & WIDMER, for the appellee John T. Wilson.

Per CURIAM : We have thoroughly examined the record in this case, and carefully considered the printed arguments filed on behalf of the different parties, and have thereupon determined that the judgment of the Appellate Court shall be affirmed. The foregoing opinion is approved and adopted as a sufficiently accurate expression of our views upon the questions arising upon the record.

Our statute gives the form of an acknowledgment of deeds, which it declares shall be sufficient, and it requires the officer

to subscribe his name to the certificate, (Rev. Stat. 1874, chap. 30, sec. 26, entitled "Conveyances,") and the only safe rule is to require this in all cases of statutory acknowledgments. *Marston* v. *Bradshaw*, 18 Mich. 81, and same case in 100 Am. Dec. 152. See, also, Freeman's note to *Livingston* v. *Kettle*, 41 Am. Dec. 173, under the head of "Signing and sealing by officer."

Under the facts of this case, even the *answer* of Abram Wilson, made under oath, pursuant to a prayer of the bill, could not be read in evidence against his co-defendant, Boozel. (*Rust et al.* v. *Mansfield et al.* 25 Ill. 336.) To allow his *default* to have an effect which his *answer* under *oath* could not have, would be contrary to all principle. The decree *pro confesso* against him can affect no one else, because it is not alleged in the bill, that, in any view, he has a present interest in the property that can be affected by the decree. The theory of the bill is, that, in equity, the property is that of O. J. Wilson, while the answer of Boozel claims that it is his. Abram Wilson was a mere conduit through which the title passed.

The fact that the evidence as to the consideration of the $1000 note given by O. J. Wilson to John T. Wilson was given orally before the trial court, is a material circumstance to be considered in a case like the present. The court can determine much, from the appearance and manner of the witness while testifying, as to his candor; and if John T. Wilson testified the truth, his note is *bona fide*, and he stands on an equal footing with other creditors.

The judgment is affirmed.

*Judgment affirmed.*

Mr. JUSTICE BAKER, having passed upon this case in the Appellate Court, took no part in its decision here.